UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

GERLING-KONZERN GENERAL INSURANCE :
COMPANY — U.K. BRANCH,              :
                                    :
        Plaintiff,                  :
                                    :
            v.                      :   Case No. 2:06-cv-76
                                    :
NOBLE ASSURANCE COMPANY and         :
SHELL PETROLEUM, INC.,              :
                                    :
        Defendants.                 :

**MEMORANDUM and ORDER**

Defendant Noble Assurance Company ("Noble") has moved to
dismiss this action for lack of subject matter jurisdiction and
improper venue, pursuant to Rules 12(b)(1) and (3) of the Federal
Rules of Civil Procedure.[1]  As grounds, it states that it and
Plaintiff Gerling-Konzern General Insurance Company–U.K. Branch
("Gerling") contracted to arbitrate all disputes arising under
the insurance policies at issue in this case; that pursuant to
those contracts an arbitration took place in London, England; and
that Noble received an award in its favor on March 27, 2006.
Noble contends that this Court lacks subject matter jurisdiction
over Gerling's action for rescission of its contract with Noble,
vacatur of the arbitral award, and a declaration that Noble's
Certificate Policy, issued to Equilon Enterprises LLC
("Equilon"), was illegal or void from its inception.

---

[1]  Noble has withdrawn its alternative request for a stay of this
action and an order compelling a return to arbitration.  Def.
Noble's Reply in Supp. of Mot. to Dismiss 1 n.1 (Doc. 51).

Shell Petroleum Inc. ("SPI") has moved to dismiss the action against it for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  Gerling, for its part, has moved for summary judgment on its rescission claims.

For the reasons that follow, Noble's motion (Doc. 26) is granted in part, denied in part and denied in part as moot. SPI's motion (Doc. 35) is denied without prejudice, and Gerling is afforded limited discovery related to jurisdiction.  Gerling's motion (Doc. 52) is denied.[2]

## I.  Background

Gerling's complaint sets forth eight counts related to a contract of reinsurance it issued to Noble in connection with insurance Noble issued to its parent corporation, SPI.  Four counts (Counts I-IV) seek rescission of the contract for fraudulent misrepresentation, negligent misrepresentation, material nondisclosure and breach of a duty of utmost good faith. Two counts (Counts V & VI) seek vacatur of the award issued by the English arbitration panel, on the grounds that the award violated public policy and was issued in manifest disregard of the law.  One count (Count VII) seeks a declaration that a "Certificate Policy" issued by Noble to Equilon is an illegal and

---

[2]  Gerling has requested oral argument on the motions.  The Court finds that the parties have thoroughly explored the issues in their submissions, and that oral argument is unnecessary.  *See* L.R.7.1(a)(6).  Gerling's Request for Consolidated Scheduling of Oral Arguments (Doc. 58) is therefore denied as moot.

unenforceable contract which necessitates vacatur of the arbitral award.  One count (Count VIII) seeks a declaration that Noble's issuance of the Certificate Policy rendered Gerling's contract of reinsurance void at its inception.

SPI, a holding company, is a Delaware corporation.  Its wholly-owned subsidiary, Noble, is a captive insurance corporation, licensed to conduct insurance business in the State of Vermont.  Another wholly-owned subsidiary, Shell Oil Company, is also a Delaware corporation, and is also licensed to conduct business in the State of Vermont.

Noble provides insurance coverage for its parent, SPI, and related and affiliated companies.  Noble issued an insurance policy ("Noble-Shell Policy") to SPI effective July 1, 1997 to July 1, 2000.  The Noble-Shell Policy contains a mandatory arbitration clause that provides:

> Any dispute arising under this policy shall be finally and fully determined in London, England under the provisions of the English Arbitration Act of 1950, as amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy . . . .

Noble-Shell Policy ¶ V(o) (Doc. 26, Ex. A).

Gerling, among other companies, underwrote the Noble-Shell Policy, reinsuring a $50 million layer, excess of an underlying $100 million layer.  The Gerling Policy includes an endorsement that the insurance afforded by the policy "shall follow all the terms and conditions of [the Noble-Shell Policy]."  Gerling

3

Policy, Endorsement No. 10 (Doc. 49, Ex. I).  Gerling and Noble

agree that any dispute arising under the Gerling Policy must

therefore be submitted to arbitration in London, England.

The underlying dispute between Gerling and Noble arose from

a joint venture between Shell Oil Company and Texaco, Inc.

("Texaco") entered into on January 15, 1998, known as Equilon.

Equilon was a "limited liability entity," or "LLE," as the term

is used in the Noble-Shell Policy and the Gerling Policy.  Shell

Oil Company had a 56% interest in Equilon.  At the time that

Equilon was formed, Texaco held a 37.45% interest in Olympic Pipe

Line Company ("OPL").  That interest was transferred to Equilon.[3]

OPL owned a pipeline that transported petroleum products from an

Atlantic Richfield Company ("ARCO") refinery north of Seattle,

Washington to Portland, Oregon.

On June 10, 1999 the pipeline ruptured in Bellingham,

Washington, leaking gasoline and causing an explosion and fire.

Multiple lawsuits ensued, for wrongful death, personal injury and

property damage.  ARCO made claims against its business

interruption insurers, and ARCO and the insurers sued Equilon and

OPL to recover more than $500 million in business interruption

losses.  OPL declared bankruptcy and Equilon eventually

---

[3]  The parties dispute whether Equilon acquired its interest in
OPL on January 15, 1988, when Equilon was formed, or on April 1,
1999, when the Texaco entity that owned the OPL stock merged with
Equilon.

negotiated a $200 million settlement in exchange for release of all claims against Equilon and OPL.

The Gerling Policy identified the "named insured" as SPI "and Additional Insureds as Underlying."  Gerling Policy, Endorsement No. 13.  The Gerling Policy identified Equilon as an Additional Insured.  *Id.* Endorsement No. 8.  The Gerling Policy also included a specific limited liability endorsement that applied to Equilon and provided that it was insured under the Gerling Policy.  *See id.* Endorsement No. 18.  The endorsement also provided that an LLE in which a named insured acquired more than five or less than one hundred percent interest, and to whom Noble issued a policy, would be considered an insured, provided that the named insured's interest in the LLE was provided to Gerling in the next renewal submission, "subject to the limits, retentions, terms, conditions and exclusions of the Policy," and other conditions not relevant to this case.  *Id.* ¶ 3.[4]

---

[4]  Paragraph 3 provides in relevant part:
    Any LLE, which is not otherwise an Insured . . . in which the Named Insured, after 1st July 1997, acquires more than 5% or less than 100% of the equity and to whom the Reinsured hereon issues a policy shall be any Insured under the policy provided that (a) the fair value of the sum of all cash, securities, assumed indebtedness and other consideration expended by all Insureds for such equity does not exceed 5% of the total assets of the Named Insured as most recently reported to the Company for rating purposes prior to the Annual Period in which such acquisition occurs, . . . (d) such LLE shall cease to be an Insured at the end of such Annual Period unless the Named Insured's interest in such LLE is provided to the Company in the

On October 5, 2000 Noble issued a Certificate Policy which identified Equilon as the named insured.  The Certificate Policy was effective retroactively for the period January 1, 1999 to December 31, 1999, and afforded limits of liability of $650 million.  The Certificate Policy stated that "coverage hereunder shall extend to liabilities arising from any assets identified and defined within the [Equilon] Formation Agreements," subject to an attached limited liability entity endorsement.  Certificate Policy 4 (Doc. 55, Ex. R).  The limited liability entity endorsement extended coverage to entities such as OPL in which Equilon directly acquired an interest.  Neither SPI nor Noble sought Gerling's consent to issue the Certificate Policy, nor did Gerling receive additional premium payments from Noble as a result of its issuance.

Noble believed that the Gerling Policy fully reinsured the portion of the settlement that Noble would pay on behalf of Shell Oil company for its 56% interest in Equilon, and that Gerling was obligated for its full layer, $28 million (56% of $50 million). Gerling believed that OPL, not expressly identified as an insured entity, was not covered under the Gerling Policy and that Gerling was obligated to pay only its share of that portion of the

_____

subsequent renewal submission, and (e) any such coverage shall be subject to the limits, retentions, terms, conditions and exclusions of the Policy and set forth below.
Gerling Policy, Endorsement No. 18 ¶ 3.

settlement that could be apportioned to Equilon.  Gerling

notified Noble that OPL was not covered under the Gerling Policy

on January 20, 2003.

Following the settlement of the business interruption

litigation, Gerling and Noble entered into an agreement to

arbitrate their dispute ("Agreement to Arbitrate").  The

Agreement to Arbitrate sets forth the parties' positions, and

defines the dispute as "whether Gerling must reimburse Noble its

full layer of $28 million."  Agreement to Arbitrate ¶ 2(h) (Doc.

47, Ex. E).  It further provides that, by the parties' each

contributing $14 million to the settlement of the business

interruption claims, "[n]either Party shall be deemed a volunteer

or in any other manner to be waiving its right to litigate or

arbitrate the issue of whether Noble is entitled to full

reimbursement of the Gerling layer of $28 million."  *Id.* ¶ 3(b).

And finally, the Agreement to Arbitrate provides that "[t]he

Parties agree that the only issues to be tried in the arbitration

shall be: (1) whether the Gerling Contract provides coverage for

OPL; and, if it does not, (2) whether Equilon would be jointly

and severally liable thereby requiring Gerling to contribute up

to 100% of its layer to the settlement reached."  *Id.* ¶ 3(f).

The arbitration hearing on the first issue took place in

London on January 25 and 26, 2006.  On March 27, 2006, the

arbitration tribunal issued a partial award, ruling in Noble's

favor.  It stated that the issue before it was "whether Gerling
is contractually committed to provide coverage for [OPL]."
Partial Award 3 ¶ 1 (Doc. 26, Ex. H).  It found that Equilon was
covered under the Gerling Policy, and that OPL, as a limited
liability entity acquired by Equilon on April 1, 1999, qualified
for coverage under the terms of paragraph 3 of Endorsement 18 of
the Gerling Policy.  *Id.* 5-8 ¶¶ 8-12, 15.  It found also that "it
would seem that the certificate policy does provide coverage by
Noble to OPL, and therefore by Gerling."  *Id.* 7 ¶ 14.  As a
result of the arbitration tribunal's ruling on the first issue,
the parties did not proceed to arbitrate the second issue.

II.  **Discussion**

    **A.**  **Noble's Motion to Dismiss for Lack of Subject Matter
       Jurisdiction**

    The burden of proving subject matter jurisdiction rests on
the party asserting it, in this case Gerling, but where
jurisdiction may be determined strictly from the pleadings and
supporting affidavits, if any, Gerling need only make a prima
facie showing of jurisdiction.  *Robinson v. Overseas Military
Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).  A court construes
jurisdictional allegations liberally, and takes as true
uncontroverted factual allegations, although it may not draw
"argumentative inferences" in Gerling's favor.  *Id.*  "[O]nly if
it appears that the plaintiff can prove no set of facts that

8

would support jurisdiction," may a court dismiss for lack of subject matter jurisdiction.  *United States v. Sforza*, 326 F.3d 107, 110 (2d Cir. 2003).

Gerling's complaint alleges jurisdiction based on diversity.  *See* 28 U.S.C.A. § 1331 (West 1993) (granting jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States).  Noble does not dispute that the parties are diverse and the matter in controversy exceeds $75,000.  The parties also agree that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *done* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention") applies to any portion of this action that involves the recognition or enforcement of an arbitral award.  *See* 9 U.S.C.A. § 203 (West 1999).

**1.   The Counts Seeking Vacatur of the Arbitral Award**

Noble argues that this Court lacks subject matter jurisdiction to vacate the London, England arbitral award, a point that Gerling concedes.  *See* Pl.'s Mem. in Opp'n 19-20 (Doc. 46).  Because Counts V and VI expressly seek vacatur of the arbitral award, they are dismissed.  The portion of Count VII that seeks vacatur of the award is dismissed as well.  *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 21, 23 (2d Cir. 1997); *Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial y Comercial*, 745 F. Supp.

172, 178 (S.D.N.Y. 1990).[5]

> **2.** **The Counts Seeking Rescission or Voiding of the Gerling Contract, or Declaratory Relief with Respect to the Certificate Policy**

Noble argues further that this Court lacks subject matter jurisdiction over Gerling's remaining claims on the grounds that "the practical, legal and desired effect of a successful rescission claim would be the nullification and vacatur of the Award." Def. Noble's Reply 9 (Doc. 51). But a successful rescission claim will not nullify or vacate the arbitral award; it will entitle Gerling to avoid or disaffirm the contract and to receive restitution. A declaration that the certificate policy is unenforceable or the Gerling policy void ab initio likewise will not operate to nullify or vacate the arbitral award.[6]

---

[5] Gerling suggests that the Court view the counts seeking vacatur as merely invoking its authority to decline to enforce or recognize the arbitral award. The New York Convention does not confer jurisdiction upon this Court to decline to enforce or recognize an award in the absence of a proceeding either to compel arbitration or to enforce an arbitral award, however. *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 n.5 (2d Cir. 1989); *accord Gerling Global Reinsurance Corp. v. Sompo Japan Ins. Co.*, 348 F. Supp. 2d 102, 105 (S.D.N.Y. 2004). No such proceeding has been commenced; that Noble seeks to fend off Gerling's challenge to the validity of the arbitral award by invoking the New York Convention's provisions does not transform this proceeding into one to enforce an arbitral award.

[6] Noble's citation to an unpublished decision from the Eastern District of Texas does not assist its argument. The Texas case involved direct and collateral attacks on the foreign arbitration proceeding itself, in claims that the arbitration panel was suborned by corruption and bribery. *See Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, No. 1:05cv619, slip op. at 2, 3 (E.D. Tex. Mar. 15, 2006). Because the court could not afford

As the parties and the arbitration board agreed, the only issue to be determined at the first phase of the arbitration proceeding was "whether the Gerling reinsurance policy in force on June 10, 1999 provided coverage for OPL." Noble Br. 6 (Doc. 47, Ex. L); *see also* Partial Award 3 ¶ 1; Gerling's Points of Defence 8 ¶¶ 25-26. (Doc. 26, Ex. F). The parties assumed the existence of an enforceable contract, and Noble argued, apparently successfully, that according to the terms of the Noble-Shell Policy which called for the application of New York law, the tribunal was not permitted to consider extrinsic evidence. *See* 1/25/06 Arbitration Tr. 49:25-52:4 (Doc. 47, Ex. Q) (referring to Noble-Shell Policy ¶ V(q)).[7]

---

the relief sought without invalidating the arbitral award itself, it dismissed the action for lack of subject matter jurisdiction. *Id.* at 6. Gerling's rescission and declaratory relief claims do not attack the validity of the arbitration proceedings.

[7] The Court cannot resist noting some curious inconsistencies in the parties' positions: Noble insisted to the arbitration panel that extrinsic evidence, subjective intentions and the like were irrelevant to its proceedings, 1/25/06 Arbitration Tr. 50:9-51:24; but it has insisted to this Court that Gerling had a full opportunity, and indeed an obligation, to air its misrepresentation and nondisclosure claims before the panel, *see* Def.'s Mots. to Dismiss 6-7, 16-17 (Doc. 26); and it asserts that Gerling lied when it said it was prohibited from establishing a misrepresentation case with the use of extrinsic evidence. Def. Noble's Reply 8 n.2.
Nor has Gerling resisted this unusual tic: it argued at length to the panel concerning the significance of the Certificate Policy, 1/26/06 Arbitration Tr. 49:6-60:5; yet it argues to this Court that it had no reason to believe that the Certificate Policy had any material significance until the arbitration panel made its partial award. Pl.'s Mem. in Opp'n 11.

Whether Gerling's remaining claims are themselves arbitrable and whether they should have been submitted to the arbitration tribunal is of course not currently before the Court.  Noble has withdrawn its request for an order requiring arbitration, and has not moved for dismissal based upon res judicata.  Nevertheless the Court notes that the arbitration clause in this case calls for arbitration of "[a]ny dispute arising under this policy." Noble-Shell Policy ¶ V(o).

A contract containing an arbitration clause carries with it a presumption of arbitrability.  *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78 n.1 (1998) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *but see Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (implying that only where arbitration clause is broad does presumption of arbitrability arise, citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)).[8]  "'[D]oubts

---

[8]  Noble has argued that because enforcement and recognition of the arbitration award is governed by the New York Convention, the issue of arbitrability must be analyzed pursuant to English law, the forum for any action seeking to vacate the award.  *See Yusuf Ahmed Alghanim*, 126 F.3d at 23 (New York Convention requires that motion to vacate or set aside foreign arbitral award be governed by domestic law of rendering state).  If this were strictly an action to vacate an arbitral award, this Court would lack subject matter jurisdiction.  If the remaining claims do not seek vacatur of the arbitral award, the issue of their arbitrability is one of federal substantive law.  *Mitsubishi Motors*, 473 U.S. at 626.

concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Mitsubishi Motors*, 473 U.S. at 626 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  The federal policy favoring arbitration "applies with special force in the field of international commerce," *id.* at 631, although "as with any other contract, the parties' intentions control," whether they agreed to arbitrate an issue.  *Id.* at 626.

Arbitrability of a claim is determined by first considering whether the parties agreed to arbitrate, and second whether the dispute at issue comes within the scope of the arbitration agreement.  *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002).  The issue here would be whether the contract rescission claims fall within the scope of the parties' arbitration clause or their Agreement to Arbitrate.

In deciding whether a particular dispute falls within the scope of an arbitration clause, a court should first "classify the particular clause as either broad or narrow."  *Louis Dreyfus Negoce*, 252 F.3d at 224.  Use of the phrase "arising under" in an arbitration clause without additional language of elaboration or limitation indicates a narrow clause, and "limits arbitration to a literal interpretation or performance of the contract."  *Id.* at 226; *accord In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir.

13

1961); *see also S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984) (declining to overrule *Kinoshita*, but confining it to its facts).  As the arbitration clause merely calls for arbitration of "[a]ny dispute arising under this policy," it is unquestionably a narrow one, under the law of this Circuit.

"[I]f reviewing a narrow clause, the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Louis Dreyfus Negoce*, 252 F.3d at 224 (quoting *Rochdale Vill., Inc. v. Pub. Serv. Employees Union, Local No. 80*, 605 F.2d 1290, 1295 (2d Cir. 1979)).  "'[I]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, [a court] focus[es] on the factual allegations in the complaint rather than the legal causes of action asserted.'"  *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)).

The parties did not squarely address whether the facts alleged in the first four and last two counts of Gerling's complaint involve interpretation or performance of the Gerling and Noble-Shell policies, or collateral issues.  The counts' captions indicate that the claims do not involve interpretation

14

or performance of the contracts at issue, but a closer
examination of the facts alleged suggest that not all of the
claims can fairly be deemed collateral.

For example, Gerling's fraudulent misrepresentation count
(Count I) appears to involve an interpretation or performance of
the Gerling Policy, and not a collateral issue.  There is no
suggestion in the complaint that SPI and Noble fraudulently
induced Gerling to enter into the contract of reinsurance; rather
it alleges that after the parties entered into their contract
SPI and Noble deliberately or recklessly flouted its terms and
conditions by issuing the Certificate Policy.  It would thus
appear that the claim in Count I may be arbitrable, despite the
narrowness of the arbitration clause.

The parties dispute whether their Agreement to Arbitrate was
broad or narrow, *see* Def. Noble's Mots. to Dismiss 16 (Doc. 26);
Pl.'s Mem. in Opp'n 9-10; regardless, as Noble itself stresses,
the arbitrability of Gerling's remaining claims has no bearing on
subject matter jurisdiction.

Because the rescission and declaratory relief claims do not
involve the vacatur or nullification of or otherwise attack the
validity of an arbitral award, Noble's demand for dismissal for
lack of subject matter jurisdiction on this basis is denied.

**B.   Noble's Motion to Dismiss for Improper Venue**

Noble also argues that the action should be dismissed for

15

improper venue under Federal Rule of Civil Procedure 12(b)(3).
There is no dispute that venue of a civil action brought by
Gerling against Noble and SPI is properly laid in the District of
Vermont.  *See* 28 U.S.C.A. § 1391(a) (West 1993 & Supp. 2006).
Noble contended in its initial brief that venue is improper
because the parties agreed to arbitrate the claims in London.  In
its reply Noble makes clear that it does not seek an order
requiring arbitration.

   As discussed above, the parties sharply dispute whether
Gerling's claims for contract rescission and declaratory relief
fall within the scope of the arbitration clause or the parties'
Agreement to Arbitrate, but Noble has removed that issue from
consideration on its motion to dismiss.  Parties may waive their
rights to arbitration under certain circumstances, *see Zwitserse
Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l
Capital Markets Corp.*, 996 F.2d 1478, 1479 (2d Cir. 1993); and
actions inconsistent with an agreement to arbitrate may result in
waiver.  *See Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761
F.2d 855, 862 (2d Cir. 1985).  That an arbitration clause or an
agreement to arbitrate exists that may encompass Gerling's claims
does not result in improper venue for a civil action in which
neither Gerling nor Noble seeks arbitration.  The motion to
dismiss for lack of proper venue is denied as moot with regard to
the counts seeking vacatur of the arbitral award, and denied with

16

regard to the remaining counts.

**C.   SPI's Motion to Dismiss for Lack of Personal Jurisdiction**

On a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of showing its existence.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  Where, prior to discovery, the parties address the issue solely through the pleadings and affidavits, a plaintiff need only make a prima facie showing of jurisdiction.  *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998).  As in a motion to dismiss for lack of subject matter jurisdiction, a court construes jurisdictional allegations liberally, and takes as true uncontroverted factual allegations.  *Robinson*, 21 F.3d at 507.  "'[D]oubts are resolved in the plaintiff's favor[.]'"  *Whitaker v. Am. Telecasting,* Inc., 261 F.3d 196, 208 (2d Cir. 2001) (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).

A federal court sitting in diversity may exercise personal jurisdiction over a foreign corporation if the plaintiff can show "that the defendant is amenable to service of process under the forum state's laws[,] and . . . [if] the court's assertion of jurisdiction under these laws comports with the requirements of due process."  *Metro. Life,* 84 F.3d at 567.  Because "'nothing . . . compel[s] a state to exercise jurisdiction over a foreign

corporation unless it chooses to do so,'" *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222 (2d Cir. 1963) (en banc) (quoting *Pulson v. Am. Rolling Mill Co.*, 170 F.2d 193, 194 (1st Cir. 1948)), the first issue to resolve is whether a state statute covers a defendant under the particular circumstances of the case.  The issue is one of state law.  *Braman v. Mary Hitchcock Mem'l Hosp.*, 631 F.2d 6, 7 (2d Cir. 1980).

Gerling contends that this Court has specific personal jurisdiction over SPI pursuant to title 12, section 855 of Vermont Statutes Annotated, and general jurisdiction over SPI pursuant to title 12, section 913(b).  *See* Vt. Stat. Ann. tit. 12, §§ 855, 913(b) (2002).  Gerling served its summons and complaint and its motion for preliminary injunction on the Secretary of State for the State of Vermont, in accordance with title 12, section 855. *See* Decls. of Serv. (Docs. 13 & 31).  Section 913 applies to parties served with process "outside the state."  *See* § 913; *Schwartz v. Frankenhoff*, 169 Vt. 287, 292 n.1, 733 A.2d 74, 79 n.1 (1999).  As the record does not reflect that process was served on SPI outside the state, the Court will not analyze whether § 913(b) confers personal jurisdiction over SPI.

Under section 855,[9] a "foreign corporation is 'deemed to be

---

[9]  Section 855 provides in pertinent part:
      If the contact with the state or the activity in the
      state of a foreign corporation, or the contact or

doing business in Vermont' . . . if the corporation has 'had contact with the state,' has conducted 'activity in the state' or there has been 'contact or activity imputable to it . . . sufficient to support a Vermont personal judgment against it, arising or growing out of that contact or activity.'" *Id.,* 169 Vt. at 292, 733 A.2d at 79.  Although this provision "'expresses a policy to assert jurisdiction over foreign corporations to the full extent permitted by the Due Process Clause of the Fourteenth Amendment,'" *id.* (quoting *Chittenden Trust Co. v. Bianchi*, 148 Vt. 140, 141, 530 A.2d 569, 570 (1987)), it will only support jurisdiction over causes of action that arise out of the corporation's contacts with the state or activity in the state. *See Brown v. Cal Dykstra Equip. Co.*, 169 Vt. 636, 636, 740 A.2d 793, 794 (1999) (mem.); *see also Davis v. Saab-Scania of Am., Inc.*, 133 Vt. 317, 321, 339 A.2d 456, 458-59 (1975) (to satisfy due process, "requirements explicitly stated in statute must be met; the suit must arise or grow out of the contact or activity asserted as the basis for jurisdiction.").

---

activity imputable to it, is sufficient to support a Vermont personal judgment against it the contact or activity shall be deemed to be doing business in Vermont by that foreign corporation and shall be equivalent to the appointment by it of the secretary of the state of Vermont and his [sic] successors to be its true and lawful attorney upon whom may be served all lawful process in any action or proceedings against it arising or growing out of that contact or activity.
Vt. Stat. Ann. tit. 12, § 855.

This Court must thus determine whether SPI has had sufficient minimum contacts with or activity in Vermont, and whether those contacts or activity gave rise to Gerling's suit, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Schwartz*, 169 Vt. at 292, 733 A.2d at 79 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)). "[I]t is essential to a finding of personal jurisdiction that a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.*, 169 Vt. at 293, 733 A.2d at 79 (quoting *Burger King Corp. v. Rudzewicz*, 476 U.S. 462, 475 (1985)).

Gerling has alleged that SPI is a Delaware Corporation with its principal place of business in Houston, Texas, that "does business or transacts business in the State of Vermont both directly and through its wholly-owned subsidiary Noble." Compl. ¶¶ 3, 7. In support of its motion to dismiss, SPI has submitted the affidavit of Hector Pineda, its Assistant Secretary, who avers that SPI is a Delaware corporation with its principal place of business in Wilmington, Delaware, that it is a holding company with no employees, has no offices in Vermont and conducts no business in Vermont.

In its opposition to SPI's motion to dismiss, Gerling has elaborated its contention that SPI does business within Vermont

by arguing that SPI established its captive insurer here, that it owns, operates and controls Noble, that the Noble-Shell policy was issued in Vermont, and that SPI owns other entities that do business in Vermont, including Shell Oil Company.  Assuming without deciding that any or all of these allegations constitute sufficient minimum contacts with Vermont, Gerling has not shown that its litigation arises out of or relates to these contacts in order to support the exercise of specific jurisdiction under section 855.

Gerling has sued SPI for fraudulent misrepresentation, negligent misrepresentation and material nondisclosure.  It has alleged that SPI and Noble specifically represented to it that Noble would not issue any policy in the name of Equilon, that SPI and Noble negligently failed to provide complete and accurate information concerning the post-loss issuance of the Certificate Policy to Equilon, and that SPI and Noble failed to disclose their intent to issue and the actual issuance of the Certificate Policy.  Compl. ¶¶ 50, 61, 67.  Gerling acknowledges moreover that the act giving rise to its lawsuit is Noble's issuance of the Certificate Policy, an act it asserts took place in Vermont.[10]  Pl.'s Mem. in +Opp'n 13, 17 (Doc. 48).

Gerling has not alleged or argued that SPI took any action directly, in Vermont or elsewhere, concerning these alleged

---

[10]  SPI does not dispute this assertion.

misrepresentations and nondisclosures and the issuance of the Certificate Policy.  Nor has it specified what SPI, apart from Noble, is alleged to have done to Gerling.  It argues that Noble's Vermont contacts must be attributed to SPI because Noble was a "mere department" of SPI.  Pl.'s Mem. in Opp'n 15-16.  *See e.g.*, *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (under New York law, court may have personal jurisdiction if local subsidiary is agent or mere department of foreign parent corporation).  Specifically Gerling states that in addition to SPI's total ownership of Noble, (1) Noble is an unfunded captive of SPI and therefore completely financially dependent on it; (2) Noble is fully staffed and operated by SPI and has no independent employees; and (3) Noble's sole purpose is to provide insurance to SPI and its affiliates.  Pl.'s Mem. in Opp'n 16.[11]

---

[11]  In reply SPI produced the affidavit of Skip Neilson, a Shell Oil Company risk and insurance advisor familiar with the facts of this case, who averred that according to his personal knowledge SPI has done nothing to organize, staff, operate or control Noble, nor has it been involved in Noble's issuance of insurance policies or the purchase of reinsurance policies.  Neilson Aff. ¶¶ 2, 3(e)-(i) (Doc. 66, Ex. A).  Gerling moved to strike the Neilson affidavit, on the grounds that the affidavit lacked a proper foundation and should have been submitted earlier.  The Court has not considered the Neilson affidavit in evaluating whether SPI's motion should be granted; the motion to strike (Doc. 67) is therefore denied as moot.  The Court reminds both SPI and Gerling that should SPI renew its challenge to personal jurisdiction, supporting and opposing affidavits must "be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also* Fed. R. Evid. 602.

Vermont courts have not had an opportunity to decide the nature or extent of the control that a foreign parent corporation must exert over a local subsidiary in order to subject the parent to specific personal jurisdiction based on the subsidiary's activity.  In *Pasquale v. Genovese*, 136 Vt. 417, 392 A.2d 395 (1978), the Vermont Supreme Court considered whether a court acquired general personal jurisdiction over a foreign corporation by virtue of its ownership of a subsidiary that did business in Vermont.  The Court rejected the notion that total ownership and control of a subsidiary that did business in Vermont automatically rendered the parent corporation amenable to service of process under the state's long-arm statutes.  *Id.*, 136 Vt. at 420-21, 392 A.2d at 398; *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 n* (1988) ("activities of subsidiary are not necessarily enough to render a parent subject to a court's jurisdiction," citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37 (1925)).  *Pasquale* stated that under Vermont law total ownership of a subsidiary is a factor to be considered, but not a sufficient basis for the exercise of general personal jurisdiction over the parent corporation.  136 Vt. at 421, 392 A.2d at 398.  *Pasquale* requires a court to examine whether the parent has the requisite minimum contacts with the forum for the exercise of general jurisdiction under section 913, taking into consideration the parent's total

23

ownership of a subsidiary authorized to do business in Vermont. *Id.*

Vermont courts will similarly require something more than a parent's ownership and control of its subsidiary for the exercise of specific personal jurisdiction under section 855. *See Pasquale*, 136 Vt. at 421, 392 A.2d at 398 ("intentional and affirmative action by the nonresident defendant . . . remains the key to personal jurisdiction" under section 855). SPI will be deemed to be doing business in Vermont (and therefore amenable to substituted service under section 855) if the activities that form the basis for Gerling's suit are imputable to SPI. *See* Vt. Stat. Ann. tit. 12, § 855; *Schwartz*, 169 Vt. at 292, 733 A.2d at 79.

The critical inquiry is thus whether there have been direct or indirect acts by the parent related to the allegations of the complaint that would constitute "purposeful availment" of the forum. *See Burger King*, 471 U.S. at 475 ("'purposeful availment'" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts"). Gerling has offered only the conclusory contention that SPI's domination of Noble is so complete that Noble's material misrepresentations, omissions and issuance of the Certificate Policy must be attributed to SPI. Even were Gerling's assertions of control adequate to show that

24

Noble was a "mere department" of SPI, it has not linked this relationship between parent and subsidiary to the conduct that forms the basis of its suit.

On the current record, Gerling's allegations and averments have not made out a prima facie case that this Court has personal jurisdiction over SPI under section 855.[12]  It is certainly possible, however, that after discovery Gerling may be able to supply additional facts concerning SPI's direct or indirect involvement to allow the exercise of personal jurisdiction over SPI.  *See El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) (plaintiff faced with motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest defendant defeat jurisdiction by withholding information on its contacts with the forum).  Accordingly, SPI's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 35) is denied without prejudice.  Gerling is permitted limited discovery related to whether SPI is subject to personal jurisdiction.

**D.  Gerling's Motion for Summary Judgment**

Gerling seeks summary judgment with respect to its claims for negligent misrepresentation (Count II), material nondisclosure (Count III) and breach of duty of utmost good faith

---

[12]  It is therefore unnecessary to assess whether personal jurisdiction based upon these asserted contacts comports with the requirements of due process.  *See Metro. Life*, 84 F.3d at 567 (resolving questions of personal jurisdiction requires two-part inquiry).

(Count IV).  All three counts seek rescission of the Gerling
Policy.

Summary judgment is appropriate when "there is no genuine
issue as to any material fact and . . . the moving party is
entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A
"dispute about a material fact is 'genuine,' . . . if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248 (1986); *accord GlobalNet Financial.Com, Inc. v.
Frank Crystal & Co.*, 449 F.3d 377, 381 (2d Cir. 2006).  In
determining whether a genuine issue of material fact exists, "a
court must resolve all ambiguities, and draw all inferences,
against the moving party." *Id.* at 382.

In order for this Court to grant summary judgment on the
three rescission claims, Gerling must show an absence of any
dispute of material fact concerning whether Noble and/or SPI made
negligent misrepresentations to Gerling concerning the issuance
of the Certificate Policy; whether Noble and/or SPI failed to
disclose their intent to issue and actual issuance of the
Certificate Policy; and whether Noble breached its duty of utmost
good faith to Gerling.  Material facts remain strongly in dispute
on each of these claims.

The parties to an insurance contract "owe to each other 'the

duty of the utmost good faith in their dealings together, and in exercising the privileges and discharging the duties specified in and incident to the policy contract.'" *Commercial Ins. Co. of N.J. v. Papandrea*, 121 Vt. 386, 391, 159 A.2d 333, 336 (1960) (quoting *Johnson v. Hardware Mut. Cas. Co.*, 109 Vt. 481, 491, 1 A.2d 817, 820 (1938)); *accord Farmers' Mut. Fire Ins. Co. v. Marshall*, 29 Vt. 23, 28 (1856) (law of insurance requires the utmost good faith); *see also Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510 (1883) (in reinsurance case brought in admiralty duty of *uberrimae fidei* required disclosure of all material facts); *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992) ("relationship between a reinsurer and a reinsured is one of utmost good faith," requiring disclosure of all facts that materially affect risk of which  is aware and of which reinsurer has no reason to be aware, applying New York law).

In fulfillment of that duty, "all representations inserted in the policy, . . . must be strictly complied with, or the policy is avoided." *Farmers' Mut.*, 29 Vt. at 28.  False "representations and concealments which are material, and directly affect the risk," render the policy void. *Id.* "Full candor and complete honesty are required." *Commercial Ins.*, 121 Vt. at 391, 159 A.2d at 336.

Noble does not dispute that it owed Gerling a duty of utmost

good faith.  It argues merely that the question of breach requires the determination of disputed issues of fact regarding whether there was a misrepresentation or failure to disclose a fact, and whether the fact was material.

Gerling claims that "[t]here can be no dispute that representations made by the defendants to Gerling prior to issuance of the Gerling Contract, as well as subsequent thereto, were false."  Pl.'s Mem. 25 (Doc. 54).  It cites the following as misrepresentations: that Noble would not issue policies in addition to the self-insured retention, and that it would not issue policies in the name of Equilon.  *Id.* 23.  These representations were made in 1997, 1998 and 1999, according to Gerling, and when Noble issued the Certificate Policy in 2000, it rendered these earlier representations false.

There are two problems with Gerling's reasoning.  First, the parties dispute whether the statements were false.  Noble points out that the Gerling Policy expressly contemplated that Noble could issue a policy to an after-acquired limited liability entity such as Equilon, without notice to Gerling.  *See* Gerling Policy, Endorsement No. 18 ("[a]ny LLE . . . in which the Named Insured, . . . acquires more than 5% or less than 100% of the equity and to whom the Reinsured hereon issues a policy shall be any Insured under the policy . . .").

Second, if the representations are false, they may not have

28

been false when made.[13]  A statement of intent to perform a
contractual commitment will not support a claim for negligent
misrepresentation.  *See Howard v. Usiak*, 172 Vt. 227, 232, 775
A.2d 909, 913-14 (2001).  Either Noble never intended to honor
its purported commitment not to issue a policy such as the
Certificate Policy, in which case its conduct supports a claim
for intentional misrepresentation, or the subsequent failure to
abide by the commitment supports a claim for breach of contract,
not negligent misrepresentation.  *See id.*, 172 Vt. at 231-32, 775
A.2d at 913 (citing *Gerhardt v. Harris*, 934 P.2d 976, 985 (Kan.
1997) as rejecting notion that any breach of contract could be
treated as negligent misrepresentation).

     As to materiality, the parties agree that a fact is material
if disclosure of that fact would have led the insurer to decline
to insure the risk or to charge a higher premium.  Whether
issuance of the Certificate Policy expanded the risk to Gerling
is one of the key areas of controversy in this case.  For
example, although Gerling has consistently argued that the
arbitration tribunal based its conclusion that the Gerling Policy
provided coverage to Equilon and OPL on the existence of the
Certificate Policy, Noble has emphasized that the tribunal found
an alternate basis for coverage.  It is by no means undisputed

---

[13]  Gerling appears tacitly to acknowledge this when it states
"[t]he issuance of the Certificate Policy clearly rendered
defendants' prior representations false."  Pl.'s Mem. 26.

that issuance of the Certificate Policy expanded the scope of Gerling's coverage, given Noble's, and the arbitration tribunal's, interpretation of Endorsement 18 of the Gerling Policy.

Disputed issues of material fact as to the falsity and materiality of Noble's representations to Gerling preclude summary judgment on Counts II, III and IV of Gerling's complaint. The motion is therefore denied.

**III. Conclusion**

For the reasons stated above, Noble's motion to dismiss for lack of subject matter jurisdiction is granted in part, denied in part and denied in part as moot.  SPI's motion to dismiss for lack of personal jurisdiction is denied without prejudice, and Gerling is permitted limited jurisdictional discovery.  Gerling's motion for summary judgment is denied.  Gerling's request for consolidated scheduling and its motion to strike are denied as moot.

Dated at Burlington, Vermont this 1st day of November, 2006.


                              /s/ William K. Sessions III
                              William K. Sessions III
                              Chief Judge

30